MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
*Attorneys for Plaintiff Sandoz Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
**SANDOZ INC.**
                Plaintiff,

      -against-

**CEDIPROF, INC.**
                Defendant.

---------------------------------------------------------------x

Index No.

**COMPLAINT**

Plaintiff Sandoz Inc. ("Sandoz" or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint against Defendant Cediprof, Inc. ("Cediprof" or "Defendant"), states as follows:

## INTRODUCTION

1. This action arises out of Cediprof's wrongful termination of the parties' Agreement for Marketing and Distribution of Products, dated July 31, 2002, as amended ("Agreement"), and Sandoz's right to obtain provisional remedies, including injunctive relief and specific performance, in aid of arbitrating this underlying dispute.

2. Under the parties' Agreement, Sandoz has the exclusive right to market, distribute, and sell Cediprof's levothyroxine sodium tablets ("Levothyroxine" or "Product"), a drug used to treat hypothyroidism, in the United States, and certain territories. Cediprof must

exclusively supply Sandoz with its requirements for the Product under the terms of the Agreement.  In June 2020, however, with more than two years remaining in the contractual term, Cediprof made a baseless attempt to end the parties' contract, informing Sandoz that it was terminating the Agreement allegedly for cause, it would no longer fill orders, including certain June orders Sandoz previously submitted and Cediprof accepted, and that Sandoz was permitted to sell its remaining inventory only until July 31, 2020.

3. Given Cediprof's actions, earlier today Sandoz commenced arbitration proceedings before the American Arbitration Association ("AAA") in New York, New York, consistent with the parties' Agreement.  Sandoz now seeks an order from this Court compelling Cediprof to continue to fill orders placed by Sandoz, and enjoining Cediprof from selling the Product to any company besides Sandoz in the United States and covered territories, and from further disseminating and/or utilizing Sandoz's confidential customer information in any manner not in service of the Agreement.  This relief, which is provided under the Agreement precisely for situations like these, is necessary to prevent Cediprof's wrongful termination and other breaches from continuing to harm Sandoz, its customer relationships, and patients while the AAA resolves this dispute.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper in this district because any controversy, claim or dispute relating to, arising out of, or in any way connected to the Agreement is to be arbitrated in New York, New York, and the Agreement is governed by, construed and enforced in accordance with the laws of the State of New York.  The parties' arbitration provision further provides that a party shall also have the right to obtain provisional remedies, including injunctive relief or specific performance, from a court having jurisdiction thereof, before an arbitration decision is

rendered. The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., requires courts to enforce privately negotiated agreements to arbitrate in accordance with their terms.

5. The Court has personal jurisdiction and venue is proper in this judicial district because the parties consented to arbitrate their dispute in New York, New York. (Agreement § 16.3.)

## THE PARTIES

6. Plaintiff Sandoz is a corporation organized under the laws of the state of Colorado and has its principal place of business in New Jersey. Sandoz was formerly known as Geneva Pharmaceuticals, Inc. and began conducting business under the name Sandoz on December 1, 2003. Sandoz manufactures, markets, and distributes generic pharmaceuticals and biosimilars.

7. Defendant Cediprof is a corporation organized under the laws of the Commonwealth of Puerto Rico. Cediprof is a successor to the Agreement by merger with Alara Pharmaceutical Corp. Cediprof developed the Levothyroxine product that is the subject of the Agreement, and has the right to manufacture, market, and distribute Levothyroxine to purchasers that do not interfere with Sandoz's rights.

## FACTUAL BACKGROUND OF THIS ACTION

**A. The Parties Agreed to Arbitrate Any Disputes Related to the Agreement and Provided Plaintiff with the Right to Obtain Injunctive Relief from This Court.**

8. On July 31, 2002, Alara Pharmaceutical Corp., Cediprof's predecessor in interest, entered into the Agreement with Geneva Pharmaceuticals, Inc., Sandoz's predecessor in interest, to market and distribute Levothyroxine, in part, in the United States, its possession and territories, excluding Puerto Rico and the U.S. Virgin Islands.

9. The Agreement provides that any "controversy, claim or dispute relating to, arising out of, or in any way connected with this Agreement or any term or condition hereof, or the performance by either party of its obligations hereunder, whether before or after termination of this Agreement, except as otherwise expressly provided in this Agreement, shall be finally resolved by binding arbitration." (Agreement § 16.3.)  The parties further agreed that the arbitration shall be conducted according to the Commercial Arbitration Rules of the AAA. (*Id.*)

10. In addition, the Agreement provides: "Notwithstanding the terms of this Section 16.3, a party shall also have the <u>right to obtain prior to the arbitrator(s) rendering the arbitration decision, provisional remedies including injunctive relief or specific performance from a court having jurisdiction thereof.</u>" (emphasis added). (*Id.*)

11. Pursuant to the parties' agreement to arbitrate any dispute related to the Agreement, on July 20, 2020, Sandoz commenced arbitration proceedings against Cediprof before the AAA in New York alleging breach of contract for wrongful termination of the Agreement, breach of the notice and cure provision, breach of the confidentiality provision, and breach of Cediprof's obligation to supply the Product to Sandoz, among other things.

    **B. Cediprof's Wrongful Termination and Breach of Contract Are the Basis of the Underlying Arbitration.**

12. Under the Agreement, Cediprof granted Sandoz the "exclusive right to sell, market and distribute [Levothyroxine] in the Territory during the term of this Agreement . . . [and] the rights under the Product's NDA Supplements and/or ANDA's . . . ." (*Id.* § 3.3.)  The Agreement also provides that Cediprof "shall make every reasonable effort to manufacture, package and deliver the Product so that [Sandoz's] requirements are met." (*Id.* § 2.2.)

13.     Since the early 2000s, Sandoz actively marketed, supplied and distributed Levothyroxine using commercially reasonable marketing and promotional strategies.

14.     The Agreement had an initial term of fifteen years, which would automatically renew until either party terminated the Agreement by delivery of six months advance written notice.  Pursuant to an amendment, the parties extended the term of the Agreement through July 31, 2022.

15.     Sandoz has ongoing contracts in place with customers to market, supply, and distribute Levothyroxine.

16.     On April 29, 2020, Cediprof sent Sandoz a purported notice asserting two alleged "defaults" under the Agreement related to increasing Sandoz's inventory levels and the manner in which audits are conducted.  Neither alleged "default" has a basis in either the contract or in fact, *i.e.* the alleged obligations Sandoz purportedly defaulted on appear *nowhere* in the Agreement.  And neither alleged "default" would have constituted a material breach defeating the contract's purpose or otherwise excusing the parties' performance.  Indeed, both alleged "defaults" by their very nature were susceptible to cure by either increasing inventory or requesting alternative parameters for the audit.

17.     On June 19, 2020, 51 days after it sent the April 29th Letter, Cediprof notified Sandoz that it was terminating the Agreement for cause effective July 31, 2020, that the alleged breaches could not be cured, and that Cediprof would no longer supply the Product, with a limited exception for a handful of specific orders, but was cancelling orders Sandoz previously submitted and Cediprof accepted.

ny-1959675

18.     Cediprof's termination for cause was improper as Sandoz had not breached any of its actual obligations under the Agreement, and Cediprof's unilateral determination that the alleged "defaults" could not be cured was unreasonable.

19.     By taking these actions, Cediprof failed to comply with the Agreement's 90-day cure period for any alleged defaults and failed to meet its supply obligations by cancelling the June orders.

20.     Notably, by purportedly terminating the Agreement for cause, Cediprof attempted to trigger a non-compete provision in the parties' Agreement that prohibits Sandoz from marketing a levothyroxine sodium table product in the United States and territories covered under the Agreement for a period of four years.  In other words, Cediprof's purported termination for cause is more than just a wrongful termination, given the lack of any defaults, but it is an attempt to keep Sandoz out of the product market as Cediprof works with one of Sandoz's competitors to sell Cediprof's Levothyroxine to which Sandoz has had the exclusive rights.  By terminating the Agreement in this manner, Cediprof escapes the parties' agreed-upon six-month notice period for terminating the Agreement and gets rid of a competitor in favor of its new distributor.

21.     Sandoz has been damaged as a result of Cediprof's wrongful termination of the Agreement and now has a dwindling inventory of the Product and is in imminent danger of being unable to fill existing customer orders and excluded from the product market.

22.     Even more, Sandoz subsequently learned from its customers that as early as July 1, 2020, they had been contacted by a company, presumably Cediprof's intended new distributor, claiming to hold distribution rights with Cediprof.  The company informed the customers that

Sandoz's rights to the Product had been impaired, and at least on one occasion, that this Sandoz competitor would be taking over Sandoz's distribution of the Product in the next few weeks. In some instances, customers have also informed Sandoz that the company requested that they sign a nondisclosure agreement in order to begin negotiations on price and to start shipping by August 1, 2020.

23. Sandoz's customer information is confidential under Section 12.1 of the Agreement. Cediprof is aware of Sandoz's customers, having obtained the information during the parties' course of dealing, and, upon information and belief, has used, or otherwise shared, that information with a Sandoz competitor. Notably, the parties' confidentiality provision survives even a proper termination of the Agreement, prohibiting the parties from using confidential information for a period of five years following the termination or expiration of the Agreement.

24. Sandoz's rights to its confidential and proprietary information, including its customer lists, and likely the volume of Product and pricing for its customers, have been harmed given Cediprof's use of this information for purposes other than in carrying out the parties' Agreement, namely: to help its new distributor ramp up to begin marketing and distributing Levothyroxine before they have any right to.

25. While Sandoz has already commenced arbitration given Cediprof's actions, Sandoz has faced and will continue to face harm, including harm to its goodwill and reputation in the marketplace as its supply of an important treatment for a relevant disease affecting many patients has been disrupted and harm to its rights in its confidential and proprietary information. Sandoz will soon be unable to fill its customer orders, is in jeopardy of being wrongfully

ny-1959675

excluded from the market, and Cediprof and its agents have already reached out to Sandoz's customers using Sandoz's confidential information and made misrepresentations regarding Sandoz's distribution right.

26. Absent an injunction and specific performance preserving the status quo, not only will Sandoz continue to face harm, but Cediprof's actions will set off a series of events where customers will have to act quickly to enter into alternative agreements for this prevalent drug, deal with disruptions to their supply, and work with pharmacies on administrative changes and with customers as they prepare to receive a different brand of their drug, all during one of the largest public health crisis we have faced.

## FIRST CAUSE OF ACTION
### (Injunctive Relief)

27. Sandoz incorporates by reference the allegations in paragraphs 1 through 26, above.

28. The Agreement provides Sandoz has the right to obtain injunctive relief in a court of competent jurisdiction pending a decision in arbitration.

29. The term of the Agreement expires on July 31, 2022.

30. Sandoz has fully performed its obligations under the Agreement and is ready, willing, and able to perform through the Agreement's expiration on July 31, 2022.

31. Cediprof wrongfully terminated the exclusive Agreement with Sandoz and has otherwise breached its obligations under the Agreement, including by violating the notice and

cure provision, violating its obligation to supply the Product to Sandoz, and violating the Agreement's confidentiality provision.

32. Sandoz is being damaged and will continue to be damaged, in that Cediprof has purported to terminate the parties' Agreement for cause despite the lack of any material breach and has and continues to impair Sandoz's exclusive rights to market, distribute, and sell the Product, has and continues to damage Sandoz's goodwill and reputation in the market, and has used Sandoz's confidential information in violation of the parties' Agreement.

33. Sandoz is likely to prevail on the merits of its claims in the attendant arbitration and requires the protection of this court preventing Cediprof from taking further steps impairing Sandoz's exclusive rights to market distribute and sell Levothyroxine under the Parties' Agreement and disseminating or utilizing Sandoz's confidential information in any manner not in furtherance of the Agreement.

34. Sandoz would suffer irreparable harm without the issuance of an injunction in aid of arbitration, pursuant to Section 16.3 of the parties' Agreement.

## SECOND CAUSE OF ACTION
**(Specific Performance)**

35. Sandoz incorporates by reference the allegations in paragraphs 1 through 34, above.

36. The Agreement provides Sandoz has the right to obtain specific performance in a court of competent jurisdiction pending a decision in arbitration.

37. The term of the Agreement expires on July 31, 2022.

38.     Sandoz has fully performed its obligations under the Agreement and is ready, willing, and able to perform through the Agreement's expiration on July 31, 2022.

39.     Cediprof has the power to supply the Product to meet Sandoz's requirements as it is obligated to under the parties' Agreement.

40.     Cediprof wrongfully terminated the exclusive Agreement with Sandoz and has otherwise breached its obligations under the Agreement, including by violating the notice and cure provision, violating its obligation to supply the Product to Sandoz, and violating the Agreement's confidentiality provision

41.     To avoid or allay the harms Sandoz has faced and continues to face, Cediprof should meet its contractual supply obligations pending resolution of the underlying arbitration, as there is no adequate remedy at law to maintain the status quo.

WHEREFORE, Sandoz respectfully requests that this Court enter judgment in favor of Plaintiff as follows, pending resolution of the arbitration proceedings before the AAA:

a.  enjoining Cediprof from selling the Product to any company (including related parties) besides Sandoz in the United States and territories covered by the parties' Agreement;

b.  enjoining Cediprof from further disseminating and/or utilizing Sandoz's confidential customer information in any manner not in service of the Agreement; and

c.  compelling Cediprof to continue to fill orders for the Product placed by Sandoz.

| | |
|---|---|
| Dated: New York, New York<br>July 20, 2020 | MORRISON & FOERSTER LLP<br><br>By: */s/ Jessica Kaufman*<br>　　　Jessica Kaufman<br>　　　David J. Fioccola<br>　　　Tiffani Figueroa<br>　　　Michael G. Ahern<br>　　　250 W. 55th Street<br>　　　New York, New York 10019-9601<br>　　　Tel.: (212) 468-8000<br><br>*Attorneys for Plaintiff Sandoz Inc.* |