USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: August 3, 2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
SANDOZ INC.,                        :
                                    :
                    Plaintiff,      :           20 Civ. 5568
                                    :
     - against -                    :           **DECISION AND ORDER**
                                    :
CEDIPROF, INC.,                     :
                                    :
                    Defendant.      :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Sandoz Inc. ("Sandoz") brought this action against Cediprof, Inc. ("Cediprof"). (See "Complaint," Dkt. No. 1.) Sandoz sought an Order to Show Cause and Temporary Restraining Order ("TRO") enjoining Cediprof from selling levothyroxine sodium tablets to any person within the United States and covered territories other than Sandoz, directing Cediprof to continue to fill orders and supply levothyroxine sodium tablets in accordance with the parties' Agreement for Marketing and Distribution of Products dated July 31, 2002, as amended (the "Agreement"), and enjoining Cediprof from using Sandoz's confidential information regarding customers in violation of the Agreement. (See "Proposed Order to Show Cause," Dkt. No. 4; "MOL," Dkt. No. 5; "Georgy Declaration," Dkt. No. 6; and "Hwang Declaration," Dkt. No. 7.) Sandoz's Complaint brings one cause of action for injunctive relief and one cause of

1

action for specific performance. (Complaint ¶¶ 27-41.) In accordance with the Court's Order dated July 20, 2020, Cediprof responded on July 23, 2020. (See "Opposition," Dkt. No. 14; "Monrouzeau Declaration," Dkt. No. 15.) Sandoz replied on July 27, 2020. (See "Reply," Dkt. No. 19; "Georgy Reply Declaration," Dkt. No. 20; "Hwang Reply Declaration," Dkt. No. 21.)

The Court held a hearing by telephone on July 27, 2020, to discuss the parties' submissions. (See Docket Minute Entry Dated July 27, 2020.) As stated on the record at the hearing, based on the Court's review of the Complaint, the parties' briefs, the supporting declarations and exhibits, and the relevant case law, the Court was not persuaded that Sandoz made a sufficiently compelling showing of irreparable harm such that injunctive relief was warranted. Accordingly, the Court issued an Order denying the request for a TRO. (See "Order," Dkt. No. 23.) The Court indicated in its Order that a decision memorializing its ruling would follow. (Order at 2.) The Court now issues this Decision setting forth in greater detail the reasons for its Order.

## I. BACKGROUND

The parties have been business partners for seventeen years. Under their Agreement, Sandoz has exclusive

marketing and distribution rights to a drug made by Cediprof to treat hypothyroidism (levothyroxine sodium tablets, or the "drug" or "product"), and Cediprof must make every reasonable effort to manufacture and deliver the drug to meet Sandoz's requirements. (See Complaint ¶ 12; Hwang Decl. ¶ 6.) The Agreement provides for a 90-day cure period for alleged defaults (Complaint ¶ 19) and a six-month notice period before termination (Complaint ¶¶ 14, 20; Hwang Decl. ¶ 5). The Agreement further provides that any "controversy, claim or dispute relating to, arising out of, or in any way connected with [the] Agreement . . . or the performance by either party of its obligations" must be resolved by arbitration. (Hwang Decl. ¶ 16.) A party may obtain "provisional remedies including injunctive relief or specific performance" before the arbitrator makes a decision. (Id.)

Sandoz makes two arguments for why it is entitled to injunctive relief. First, Sandoz argues that Cediprof breached the Agreement by terminating it without cause. On April 29, 2020, Cediprof alerted Sandoz to two defaults under the Agreement. One related to increasing Sandoz's inventory levels and the other related to its audits. On June 19, 2020 (51 days later), Cediprof notified Sandoz that the defaults could not be cured, that it was

3

terminating the Agreement for cause effective July 31, 2020, and that Cediprof would no longer supply the drug (with limited exceptions) and was cancelling orders previously submitted by Sandoz and accepted by Cediprof. (Complaint ¶¶ 16-17.) Sandoz alleges that terminating for cause permits Cediprof to trigger a non-compete provision of the Agreement that prohibits Sandoz from marketing the drug for four years. (Complaint ¶ 20.) Sandoz also alleges that it has "fully performed its obligations under the Agreement" and can do so through its expiration in 2022. (Complaint ¶¶ 30, 38.)

Second, Sandoz argues that Cediprof is violating the Agreement's confidentiality clause. This clause prohibits the parties from using confidential information for five years following termination or expiration of the Agreement. Specifically, Sandoz alleges that Cediprof is working with one of Sandoz's competitors to distribute the drug, and that as early as July 1, 2020, this distributor contacted Sandoz's customers and claimed to hold distribution rights with Cediprof. Sandoz's customer list is confidential information under Section 12.1 of the Agreement, but Cediprof has "obtained the information during the parties' course of dealing." (Complaint ¶ 23.) Sandoz alleges that Cediprof is using this information and confidential

4

information regarding customer volume and pricing (see Georgy Decl. ¶ 10; Complaint ¶ 24) to work with one of Sandoz's competitors to begin marketing and distributing the product.

Sandoz commenced arbitration on July 20, 2020 and moved for a TRO and preliminary injunction the same day.

## II.   LEGAL STANDARDS

The standard for a TRO is the same as the standard for a preliminary injunction. A party seeking a preliminary injunction must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (internal quotations omitted). The showing of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." LSSi Data Corp. v. Time Warner Cable, Inc., 892 F. Supp. 2d 489, 501 (S.D.N.Y. 2012) (internal quotations omitted). To demonstrate irreparable harm, the movant must show "an injury that is neither remote nor speculative, but actual and imminent and cannot be remedied by an award of monetary

damages." Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999) (internal quotations omitted).

"When considering a motion for a preliminary injunction, unlike a motion to dismiss, the Court need not accept as true the well-pleaded allegations in Plaintiff['s] complaint." Victorio v. Sammy's Fishbox Realty Co., No. 14 Civ. 8678, 2014 WL 7180220, at *4 (S.D.N.Y. Dec. 12, 2014) (citing Incantalupo v. Lawrence Union Free Sch. Dist. No. 15, 652 F. Supp. 2d 314, 317 n.1 (E.D.N.Y. 2009)).

### III. DISCUSSION

#### A. IRREPARABLE HARM

As an initial matter, Sandoz argues that because the Agreement allows it to seek injunctive relief, such provision is a "substantial factor" and "should be given due weight" in the Court's irreparable harm analysis. (MOL at 10.) The Court is not persuaded by Sandoz's argument in this regard. While such provisions merit careful consideration by the Court, they cannot substitute for the factual determination of whether Sandoz has demonstrated actual and imminent irreparable harm. None of the cases cited by Sandoz indicates otherwise. Indeed, the cases indicate that contractual stipulations regarding the existence of irreparable harm are not dispositive. (Id.

6

(citing Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp., No. 02 Civ. 10237, 2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003)).) Quite simply, a party may not contract its way to a finding of irreparable harm, and where (as here) a plaintiff cannot otherwise demonstrate irreparable harm, such provisions do not carry the day. See, e.g., Int'l Creative Mgmt. Inc. v. Abate, No. 07 Civ. 1979, 2007 WL 950092, at *6 (S.D.N.Y. Mar. 28, 2007).

Next, Sandoz argues that it will suffer three kinds of irreparable harm absent the TRO and injunction, and that monetary damages will be insufficient to remedy these harms. First, and primarily, Sandoz argues that Cediprof will soon supply the product to another company, costing Sandoz "market share, goodwill, and future sales" (MOL at 11 (quoting Rex Med. L.P. v. Angiotech Pharms. (US), Inc., 754 F. Supp. 2d 616, 623 (S.D.N.Y. 2010))), and causing reputational harm (id. (citing 3M Co. v. Performance Supply, LLC, 20 Civ. 2949, 2020 WL 2115070, at *8 (S.D.N.Y. May 4, 2020))). Sandoz argues that these harms cannot be remedied by monetary damages alone because it will lose "an opportunity to build and maintain an overarching customer relationship in which Sandoz will be able to market other products." (Id.)

7

With respect to market share, the Court finds that Sandoz's claims of financial harm are compensable with monetary damages. Indeed, in numerous other cases involving very similar factual scenarios -- i.e., the termination of exclusive distribution arrangements -- the alleged harm was determined to be compensable in monetary damages, partly because the damages can readily be calculated based on past dealing. E.g., World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., No. 03 Civ. 8843, 2010 WL 3155176, at *10 (S.D.N.Y. July 30, 2010) (noting that money damages can typically compensate the breach of an exclusive distributorship agreement); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72-73 (2d Cir. 1979). In fact, Sandoz's arbitration demand -- currently filed under seal -- indicates precisely how much it estimates it will suffer in lost profits.

Perhaps tellingly, Sandoz has left the Court entirely in the dark in terms of the impact of its losses. Nowhere does Sandoz allege with particularity how important the drug is to the rest of its business. Sandoz merely alleges that the product "has been a cornerstone of Sandoz's business and is one of the most significant products in Sandoz's oral solid drug portfolio." (Georgy Decl. ¶ 3.) When asked at oral argument, counsel for Sandoz confirmed

8

that the company was likely worth hundreds of millions of dollars, and that while Cediprof was its only client for this particular drug, Sandoz had other clients. Counsel for Cediprof noted at oral argument that Sandoz is one of the world's largest generic drug manufacturers, and that it sells numerous other products.[1] Without more specific information, the Court declines to speculate what kind of harm Sandoz will suffer attendant to the lost profits or any secondary losses. See Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 38 (2d Cir. 1995) (irreparable harm may be found where "the very viability of the plaintiff's business, or substantial losses of sales beyond those of the terminated product, have been threatened" (internal citations omitted)). As Cediprof points out, there are simply no "allegations that Sandoz's right to market and distribute levothyroxine is essential to the life of its multi-million . . . dollar business" such that monetary damages would be insufficient. (Opposition at 1.) Nor are there any indications that either party is insolvent. Thus, the allegations of financial harm are addressable through damages that have

---

[1] See Sandoz, Prescription Medicines, https://www.sandoz.com/our-work/prescription-medicines ("We offer a broad portfolio covering all major therapeutic areas. . . . Our products . . . are sold in more than 160 countries, [and] reach more than 500 million patients . . . .").

9

already been calculated, and to the extent they are not addressable through damages, they are conclusory.

Similarly, Sandoz's allegations regarding loss of customer goodwill and reputational damages are conclusory. The key case relied on by Sandoz, Rex Medical L.P., is distinguishable; in that case the breach represented a threat to 90 percent of the plaintiff's business, such that goodwill and reputation were not the only things at stake. 754 F. Supp. 2d at 622-23. Sandoz also relies on 3M Co., but the reputational harm in that action -- a copyright case involving counterfeit N95 masks -- threatened the underpinnings of 3M's entire business. 2020 WL 2115070, at *7 ("The 3M brand and Marks are synonymous with superior quality. This is not a coincidence. For more than a century, 3M has invested hundreds of millions of dollars in advertising and marketing products under its 3M Marks and 3M Slogan.").

Here, Sandoz's allegations with respect to goodwill and reputation are not supported by any particularized factual pleading. This Court recently noted that "conclusory statements regarding loss of reputation are insufficient." Viamedia, Inc. v. WideOpenWest Fin., LLC, No. 20 Civ. 4064, 2020 WL 3415356, at *2 (S.D.N.Y. June 22, 2020); see also Shepard Indus., Inc. v. 135 E. 57th St.,

LLC, No. 97 Civ. 8447, 1999 WL 728641, at *8 (S.D.N.Y. Sept. 17, 1999) ("[C]onclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm."). There is nothing to show why the termination of this Agreement would affect Sandoz's reputation more generally, or have any spillover effect on any other product in Sandoz's massive portfolio or on any other service it offers. See also Jackson Dairy, Inc., 596 F.2d at 72-73 (even the loss of other customers resulting from the breach of an exclusive distributorship agreement is compensable by monetary damages); John Paul Mitchell Systems v. Quality King Distributors, Inc., 106 F. Supp. 2d 462, 475 (S.D.N.Y. 2000) (similar, where "the loss of goodwill is not permanent"); Helios & Matheson N. Am., Inc. v. Vegasoft Oy, No. 07 Civ. 3600, 2007 WL 1541204, at *4 (S.D.N.Y. May 24, 2007) (no irreparable harm where spillover loss of business is "at best plausible, but not probable"). The allegations regarding customer goodwill and reputational damages are limited to the claim that Cediprof maligned Sandoz's reliability as a distributor, and these allegations are insufficient. Nat'l Football League Mgmt. Council v. Nat'l Football League Players Assoc., 296 F. Supp. 3d 614, 625 (S.D.N.Y. 2017) (negative publicity insufficient to constitute irreparable harm). Furthermore,

even if Sandoz were to suffer damages from loss of goodwill, the parties' long course of dealing will enable the calculation of such damages. See Dexter 345 Inc. v. Cuomo, 663 F.3d 59, 63 (2d Cir. 2011) (noting that a long relationship between the parties "ensures that they will be able to calculate money damages for any loss of goodwill").

Next, Sandoz argues that Cediprof's breach of the Agreement's confidentiality clause cannot be remedied by monetary damages due to the intangible nature of confidentiality. The Court is not persuaded. Sandoz's claim that Cediprof breached the Agreement's confidentiality clause is based on information and belief and disputed strenuously by Cediprof. The Court credits the fact that Marco Monrouzeau, Vice President of Administration and Chief Financial Officer at Cediprof, has submitted a sworn declaration stating unequivocally that Cediprof knew the identity of only two of Sandoz's customers; Cediprof also indicated at oral argument that it did not share the limited information it had with Lannett, its new partner. (See also Opposition at 13 (Cediprof "did not at any point engage in any communications with Sandoz's levothyroxine customers" because it only knew two of them).) It would be entirely unsurprising if, as the Monrouzeau Declaration states, Lannett's "past experience as well as current

12

customer relationships equipped it with a general grasp of who were Sandoz's levothyroxine customers." (Monrouzeau Decl. ¶ 43.) The Court finds this explanation at least as plausible as the unsupported belief expressed in Gloria Georgy's Reply Declaration that it was "probable that Cediprof shared [confidential] information with Lannett." (Georgy Reply Decl. ¶ 5.) In short, the confidentiality claims are insufficient to support a finding of irreparable harm.[2]

Finally, Sandoz argues that it will suffer irreparable harm because Cediprof, by wrongfully terminating the Agreement for cause, is triggering the four-year non-compete provision. Although the Court makes no specific finding as to whether the Agreement was likely terminated wrongfully, even if it were, this harm is also calculable,

---

[2] Furthermore, even if Cediprof did at any point breach the confidentiality clause, Sandoz's argument for why such a breach would not be compensable through money damages is unpersuasive. Sandoz points out that liquidated damages are often included as remedies for confidentiality clause breaches. But if liquidated damages are typical for breaches of confidentiality clauses, then Sandoz's damages here should also be capable of remediation via monetary damages. Sandoz also argues that customer lists and pricing information is routinely afforded trade secret protection, citing Continental Industries Group, Inc. v. Altunkilic, 788 F. App'x 37 (2d Cir. 2019). In that case, the Second Circuit merely noted that information including "a cost analysis sheet, customer and supplier lists, pricing and payment terms, shipping information, customer product mixes, employee data, and identities of banks and officers providing trade financing terms and conditions" was "routinely afforded trade secret protection." Id. at 40-41. As the Second Circuit noted, however, in general, a customer list is only protectible as a trade secret when the list is "developed by a business through substantial effort and kept in confidence" and "not otherwise readily ascertainable." North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999).

13

particularly given the extensive course of dealing between the parties. Thus, this claim is capable of remediation with monetary damages via arbitration.

Because the Court finds that Sandoz has not demonstrated that it will suffer irreparable harm absent injunctive relief, it need not consider whether Sandoz has demonstrated a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.

B. SUBJECT MATTER JURISDICTION

In its review of the Complaint in this matter, the Court noted a potential issue with respect to its subject matter jurisdiction over this action. Sandoz relies on the Agreement's arbitration clauses and the Federal Arbitration Act ("FAA") for subject matter jurisdiction, personal jurisdiction, and venue. (Complaint ¶¶ 4-5.) Cediprof does not contest that the Court may exercise personal jurisdiction over it, or that venue is proper in the Southern District of New York.

However, the Court has an independent obligation to determine whether it has subject matter jurisdiction. The FAA "does not independently confer subject matter jurisdiction on the federal courts." Durant, Nichols,

Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009). That is, the FAA does not create a federal question; there must be an independent basis for jurisdiction. Id. With respect to diversity jurisdiction, Sandoz alleges that it is a Colorado corporation with its principal place of business in New Jersey and that Cediprof is a Puerto Rican corporation, but it does not specifically allege Cediprof's principal place of business or the amount in controversy. The Monrouzeau Declaration states that Cediprof's principal place of business is also in Puerto Rico and also indicates the dollar amount at issue in the pending arbitration. (Monrouzeau Decl. ¶¶ 6, 48.) Assuming diversity exists and that the amount in controversy exceeds $75,000, the Court will direct Sandoz to amend its complaint to assert these facts. See Trans Union LLC v. Lindor, 393 F. App'x 786, 789-90 (2d Cir. 2010).

## IV.   ORDER

Accordingly, it is hereby

**ORDERED** that the motion of plaintiff Sandoz Inc. ("Sandoz") for a temporary restraining order and preliminary injunction (Dkt. No. 4) is **DENIED**. Sandoz is directed to file an amended complaint within twenty-one days of the date of this Order making clear the Court's basis for subject matter jurisdiction.

**SO ORDERED.**

Dated: New York, New York
       3 August 2020

_____
Victor Marrero
U.S.D.J.